## HUME WEBSTER AND COMPANY *vs.* THE HOWE MACHINE COMPANY.

Fairfield County, March T., 1886.   PARK, C. J., CARPENTER, PARDEE LOOMIS and GRANGER, Js.

The defendant was a manufacturing corporation of this state, having its principal office in the city of New York.   S, in London, England, made a draft on the company, which was accepted for the company by the treasurer, payable at its office in New York.   The draft was discounted by the plaintiffs, and the proceeds applied to an existing indebtedness of the drawer to them, they not discharging the debt, or relinquishing anything of value.   S had at the time no funds in the drawer's hands and the acceptance was wholly for his accommodation, but this fact was not known to the plaintiffs.   By its charter the company was limited in the use of mercantile paper to that necessary for the convenient prosecution of its business.   In a suit on the acceptance it was held—

1. That the contract was governed by the law of the state of New York.
2. That by that law the plaintiffs were not *bonâ fide* holders for value.
3. That the burden of proof, after the accommodation character of the acceptance was shown, rested on the plaintiffs to show that they were *bonâ fide* holders for value.
4. That not being such, the defendant could interpose any defense that it could have availed itself of if the drawer had been the plaintiff.
5. That a provision in the charter that the company should have a lien upon the stock of its members for any indebtedness to the company could not be regarded as a permission to the stockholders to borrow and to the company to lend to them its capital.
6. That the corporation could not acquire the right to accept drafts for ac-

commodation by assuming and repeatedly exercising the right. Neither the directors nor stockholders, by permission or ratification, could confer the power on any of the officers.

7. That the taking up and paying of the draft by the plaintiffs as indorsers, did not change their position, which was fixed by their first relation to it.

Where a party takes such an acceptance without notice that it is for the accommodation of the drawer, and the acceptance is by an officer ot the company authorized to accept if the drawer has funds in the company's hands, the holder is not affected by the extrinsic fact of want of funds, and can recover upon the acceptance if he is a *bonâ fide* holder for value.

[Argued May 6th—decided December 17th, 1886.]

ACTION upon an acceptance; brought to the Superior Court in Fairfield County. The case, with the next preceding one of *The Credit Company* v. *The Howe Machine Company*, was referred to a committee, and heard with that case, and the facts common to both were embodied in a single finding, which is given in full in the report of that case. The finding of the additional facts peculiar to the present case was as follows:—

On the 28th day of March, 1877, A. B. Stockwell drew upon the Howe Machine Company two drafts for $10,000 gold each, payable at sixty days' sight, and addressed to the Howe Machine Company, 28 Union Square, New York. The drafts were both accepted by Levi S. Stockwell, as treasurer of the Howe Machine Company. When they were first presented for acceptance on the 11th of April, 1877, acceptance was refused, and the drafts were protested, but afterwards on May 19th, 1877 they were accepted as of April 11th, 1877, the day when they were first presented.

Soon afterwards Hume Webster & Co., having indorsed the drafts, sold them for A. B. Stockwell and placed the proceeds to his credit in his account with them. A. B. Stockwell was at that time indebted to Hume Webster & Co. for a much larger amount than these drafts.

When these two drafts became due and payable, one of them was paid, and the other one, on which the present suit is brought, was not paid and was duly protested, and

Hume Webster & Co., as payees and indorsers, took up and now hold the same. The draft has not since been paid by the Howe Machine Company, nor by any person.

This draft, with the indorsements thereon, is in the following words and figures:—

"Exchange for $10,000 gold.

London, 28th March, 1877.

" At sixty days' sight pay this first of exchange, second unpaid, to the order of Hume Webster & Co., ten thousand dollars gold, value received, which place to account against accompanying certificate for one thousand shares of the Indiana Manufacturing Company.     A. B. Stockwell.

" To the Howe Machine Company,

28 Union Square, New York."

Across its face is the following:

"Accepted, April 11th, 1877.    Payable at 28 Union Square, New York.    " The Howe Machine Company,

Levi S. Stockwell, Treas."

And it is indorsed as follows:

" Pay Messrs. Donnell, Lawson & Co., or order, value in account.                         " Hume Webster & Co.

" Pay J. Earle Hodges, without recourse.

"Donnell, Lawson & Co."

If upon these facts and those found in the case of *The Credit Company* v. *The Howe Machine Company*, the law is so that the defendant is liable to the plaintiffs for the draft in question by reason of the acceptance of the same by the treasurer of the defendant, in the manner hereinbefore described, then it is found that there was due the plaintiffs from the defendant, on the 29th day of December, 1883, the sum of $13,925.    But if upon the facts the law is so that the defendant is not liable to pay the plaintiffs the amount due on said draft, by reason of such acceptance by its treasurer, then it is found that there is nothing due the plaintiffs from the defendant.

Upon these facts the case was reserved for the advice of this court.

*R. S. Ransom*, of New York, and *E. W. Seymour*, for the plaintiffs.

1. The fact that the drawer was indebted to the plaintiffs and that the proceeds of the drafts which were sold by the plaintiffs were applied towards the payment of what the drawer then owed them, does not affect the rights of the plaintiffs or make them any the less *bonâ fide* holders. They did not take the bill on account, or even give credit for the bill, but they indorsed the draft and sold it for Stockwell, and with the proceeds Stockwell paid them so much of what he owed them. The proceeds of the draft when obtained belonged to Stockwell, and were, and could only have been, applied to the payment of what Stockwell owed them by his consent. The draft never was the plaintiffs' until after they were charged as indorsers and paid and took it up. The draft was not taken as security or even in payment of a precedent debt, and none of the cases cited by the defendant's counsel have any application. Even if the draft had been taken as a payment of a debt which the drawer owed and so discharged that debt, the plaintiffs would have been *bonâ fide* holders. *Day* v. *Saunders*, 37 How. Pr., 543; *Youngs* v. *Lee*, 12 N. York, 551, 555; *Brown* v. *Leavitt*, 31 id., 113; *Pratt* v. *Coman*, 37 id., 441; *Farrington* v. *Frankfort Bank*, 31 Barb., 183. But, in this case the plaintiffs did not even take, or credit the drawer with, the draft, but the drawer paid to the plaintiffs the money obtained on a sale of the draft. There is, therefore, no such question as the defendant's counsel raise in the case. The plaintiffs were simply paid a portion of the debt that A. B. Stockwell owed them in money. The purchasers of the draft certainly owned it. They did not hold it as a pledge, or as security for money lent; it was sold to them, and they paid for it, and the plaintiffs, who, as indorsers, were sureties upon it, when they were charged as indorsers, and paid the indorsee for it, and took it up, became

the owners, deriving title from such owners, with all their rights, and consequently were *bonâ fide* holders. Parsons on Notes & Bills, 261; *Flint* v. *Schomberg*, 1 Hilton, 532. The case of *Devlin* v. *Brady*, 32 Barb. and 36 N. York, and other kindred cases on which the defendant's counsel rely and lay great stress, are cases where a party, not a *bonâ fide* holder, pledges or procures it to be discounted to secure a loan, and have no application to such a case as this.

2. The finding that J. Hume Webster knew that the drawer was dealing in stocks cannot prejudice the rights of the plaintiffs, and if it is assumed that the firm or all the members of the firm knew it, that would not affect their rights, or make them any the less *bonâ fide* holders, for these reasons :—1st. There is no finding or proof that the drawer was intending to use this money for that purpose, or that they knew what the drawer was intending to do or would do with it when they indorsed the bill, or before it was sold and the money obtained.—2d. There is no law against dealing in stocks, and the use the drawer intended to or did put the money to was in no way material nor any business of the defendant.—3d. The proceeds of the draft were not in fact used to purchase or to deal in stocks, but to pay a debt the drawer owed.—4th. The presumption was and is that the Howe Machine Co. was indebted to the drawer and that the draft was drawn against funds, and that fact was afterwards admitted by the acceptance. What difference, then, could it make what the drawer intended to do with the money which the company admitted it had in its hands belonging to him? There is no question of *bonâ fides* properly in the case.—5th. Besides, as before shown, the plaintiffs have the rights of the indorsee to whom they paid and from whom they took up the draft, and that the indorsee was a *bonâ fide* holder even the defendants would not dispute.

*W. D. Shipman* and *M. H. Cardozo*, both of New York, with whom were *S. G. Wheeler, Jr.*, of New York, and *G. Stoddard*, for the defendant.

All of the argument submitted on behalf of the defendant in the case of *The Credit Company* v. *The Howe Machine Company* applies with equal if not greater force to the case of Hume Webster & Co. This action is brought by that firm upon a draft for ten thousand dollars drawn by A. B. Stockwell upon the Howe Machine Company. On March 28th, 1877, A. B. Stockwell drew upon the defendant two drafts for ten thousand dollars each, payable at sixty days sight, and addressed to the Howe Machine Company, 28 Union Square, New York, which were afterwards accepted by Levi S. Stockwell, as treasurer of the defendant company. On March 28th, 1877, A. B. Stockwell was indebted to the plaintiffs, in a much larger amount than these drafts. The plaintiffs took these drafts from Stockwell, indorsed and sold them, and placed the proceeds thereof to his credit in his account with them. When the two drafts became payable, one of them was paid, the other was not, and was duly protested, and Hume Webster & Co. as payees and indorsers took them up and now hold them.

It is clear that this draft was taken by the plaintiffs on account of a past-due debt owing to them by A. B. Stockwell for losses incurred by him in his stock speculations. This being so the plaintiffs cannot be considered *bonâ fide* holders for value of the draft.

The act of the treasurer of the defendant in accepting this draft was, as we have demonstrated in our argument in the other case, unauthorized, and the plaintiffs not being *bonâ fide* holders, having taken it for a past-due debt with knowledge of the fact that the proceeds thereof were to be used by Stockwell for his own private purposes, cannot recover.

PARDEE, J. For the facts which are common to this and the cognate case of *The Credit Company (Limited)* v. *The Howe Machine Company,* reference is made to the latter. The additional facts solely applicable to this are, that the plaintiffs were in March, 1877, doing business as bankers in London, England; that on March 28th, 1877, A. B. Stock-

well drew a draft upon the defendant company, at its office in the city of New York, in favor of the plaintiffs at sixty days sight, for the sum of $10,000 in gold. Soon after the date of the draft it was delivered by A. B. Stockwell to the plaintiffs, who indorsed and sold it for him and placed the proceeds thereof to his credit in his account with them, he being then indebted to them in a much larger sum. The draft was subsequently accepted by Levi Stockwell as treasurer of the defendant corporation, but was dishonored at maturity. The plaintiffs as payees and indorsers took it up and now hold it unpaid, and this suit is based thereon.

The defendant is a private manufacturing corporation. At the time of acceptance by its treasurer the drawer was largely indebted to it. The acceptance was solely a loan of its credit to him for his accommodation. This loan of credit, this act of accommodation, was an abuse of the power conferred upon the treasurer, and a fraud upon the corporation for which he accepted. Of this the plaintiffs were without notice or knowledge. But there is neither claim nor proof, nor ground for the assumption, that they agreed to or did discharge or release A. B. Stockwell from any portion of his liability to them upon their book account against him by the mere reception of the draft and the credit upon that account of the proceeds resulting from the indorsement and sale thereof. There is no proof of any express, and there can be no assumption of any implied agreement, that it was received in absolute payment and satisfaction, or in discharge of any portion of the drawer's liability to them; no proof nor presumption that upon dishonor of the bill they could not have enforced to the fullest extent their original account against him; no proof that upon the reception of the draft they parted with any right or property; no proof that they are not now in every respect in as good condition as if they had not received it.

The defendant had its office and place of business in New York; there the acceptance was made; there the bill was made payable. In an action at law for the enforcement of a contract, the law of the jurisdiction in which it is made

and to be executed determines the extent of the obligation of the contractor and the character of the defenses which he may interpose for his protection. We think the law of the state of New York is, that when the acceptance of a bill by the treasurer of a private manufacturing corporation is an act of fraud upon the corporation, or when the same has been unduly obtained, or the procurement and negotiation thereof is a wrong and a loss inflicted upon the corporation by the drawer and the treasurer jointly, the burden is upon the person suing upon it to prove that he is a *bonâ fide* holder ; and that he cannot be such if he received it upon a pre-existing debt, without parting with any right or property of value, and can lose nothing if he does not recover. For this reason :—he has neither paid anything for, nor lost anything in consequence of being the holder of the bill ; there was possibility of gain, no possibility of loss. It is the pleasure of the law if possible to make every fraud harmless to innocent parties ; therefore in such cases it will not permit the holder to be the instrumentality by which a needless injury should be inflicted upon the acceptor. Under this rule there remains to the defendant the right to interpose in this action all defenses of which it could avail itself if A. B. Stockwell were plaintiff.

In *Coddington* v. *Bay*, 20 Johnson, 637, (1822), the marginal note is—"Where *R* as agent had received notes to be remitted to his principal and passed them to the defendant as security against responsibilities assumed by him as indorser of the notes of *R*, and the maker of notes lent *R* for his accommodation, but not then payable, and the defendant had no notice or knowledge that the notes belonged to the plaintiff, but believed that they belonged to *R*, who had become insolvent at the time he received them : *Held*—that the notes, not being received in the usual course of trade, nor for a present consideration, the defendant was not entitled to hold them against the true owner." The court says :—" The general rule laid down seems to be this, that when negotiable paper is transferred for a valuable consideration and without notice of any fraud, the right of the

holder shall prevail against the true owner. All the cases substantially agree in this. In the application of the rule this question arises—what is that *valuable consideration* intended, which shall protect the holder as against the drawer of the note? Is the rule satisfied if enough is shown to make out a consideration as between the holder and the agent who assigned or transferred the paper? If nothing more is required the appellants must prevail; for the notes were passed for the indemnity of the appellants, and so far as Randolph and Savage are concerned that formed a valid consideration. The right to hold against the owner in any case is an exception to the general rule of law; it is founded on principles of commercial policy. The reason for such rule would seem to be, that the innocent holder having incurred loss by giving credit to the paper, and having paid a fair equivalent, is entitled to protection. But what superior equity has the holder who made no advances, nor incurred any responsibility on the credit of the paper he received, whose situation will be improved if he is allowed to retain, but, if not, is in the condition he was before the paper was passed? To allow such a state of facts as sufficient to resist the title of the real owner would be productive of manifest injustice and is not required by any rule of policy; it is enough if the holder be secure when he advances his funds, or makes himself liable on the credit of the paper he receives. In coincidence with this principle it appears to me all the cases have been decided; for although the rule is laid down generally, that the holder will be protected where the bill or note is taken in the usual course of trade and for a fair and valuable consideration without notice, in every case I have met with where the owner failed to recover, it appeared that the holder gave credit to the paper, received it in the way of business, and gave money or property in exchange." In *Philbrick* v. *Dallett*, 34 N. Y. Superior Ct. R., 370, the marginal note is :—" The doctrine that when a note has been taken for a *pre-existing debt*, it is held *bonâ fide*, &c., as held in *Swift* v. *Tyson*, 16 Pet., 1, has not been followed in this state. A contrary rule has been

firmly maintained, both at law and equity, by a long and uninterrupted series of adjudications, and is beyond question the law of the state." The court says :—"But when the acceptance is not only without consideration in fact, but in addition has been procured by means of a fraud practiced upon the acceptor, an entirely different rule prevails. Here the mere taking of a draft on account of an antecedent debt, without giving up or surrendering something of value on the faith of its acceptance, is not enough to constitute the holder a *bonâ fide* holder for value as against the acceptor. The doctrine of *Swift* v. *Tyson*, 16 Peters, has not been followed in this state. On the contrary our courts held at quite an early day that the receipt of commercial paper fraudulently put in circulation, or diverted from the purpose for which it was originally issued, merely as payment or security for a precedent debt, no new credit or other thing of legal value being given on the faith thereof, and no security being relinquished or discharged, nor any new responsibility being incurred on the credit thereof, is not parting with value, such as to enable the holder to enforce such commercial paper against an accommodation party, or to hold it against the true owner, or to hold it free of equities existing upon it against the transferrer at the time of the transfer. It is only when a creditor receives negotiable paper fraudulently put in circulation or diverted from its purpose, in good faith, *and* in actual satisfaction and discharge of a prior indebtedness, so that, unless such paper is available in his hands he loses the demand, that this is considered as parting with value. In such case the actual discharge of the personal responsibility of the debtor is equivalent to the parting with securities or to the paying of money. The extinction of a legal demand in its original form is however to be proved affirmatively, and the question whether a party is a holder for value, so as to displace in his favor any right or equity of prior parties, depends upon the fact being established of an intended and actual extinguishment. *N. York Exchange Co.* v. *De Wolf*, 3 Bosworth, 86, and authorities there cited." In *Comstock* v. *Hier et al.*, 73

N. York, 269, (1878,) the plaintiff indorsed a promissory note for the accommodation of the makers, under their agreement that the same should be used only for the purpose of taking up and retiring a former note so indorsed; but they transferred it to the defendants as collateral security for the payment of an antecedent loan, they parting with no value and relinquishing no rights upon the receipt thereof. The defendants transferred the note before maturity to a *bonâ fide* holder for value, who compelled the plaintiff to pay it. He sued the defendants for the amount so paid by him. It was held that the defendants were liable; that having no title or right to the note the transfer by them was a conversion; and that it was immaterial that they acted in good faith. The court said:—" Upon the undisputed facts proved upon the trial and found by the referee, there could have been no recovery by the defendants as indorsees of the note of Jaycox and Green against the present plaintiff upon his indorsement. His defense would have been perfect upon proof of the facts clearly established in the present action, that he indorsed the note for the accommodation of the makers, for a special purpose, to wit, to enable the latter to take up the other notes to which the plaintiff was a party, and that the note with the indorsement was fraudulently diverted from the purpose for which it was made and delivered to the defendants as collateral security for an antecedent debt, they parting with no value therefor. When a bill or note is void in its creation, or has been unduly obtained, or has been wrongfully diverted from its purpose and fraudulently negotiated, the party suing on it is bound to show himself a *bonâ fide* possessor. The affirmative is with the plaintiff in an action upon such a note, to prove a clear legal title valid as against the parties to the instrument. *Woodhull* v. *Holmes*, 10 Johns. R., 231. One who receives it after due, or with notice of the circumstances under and purposes for which it was made, although he pays a valuable consideration, is not a *bonâ fide* holder entitled to recover thereon. One who receives it before due, and without notice or knowledge of any fraud in its

inception or transfer, but for a precedent debt, and without parting with value or any valuable consideration, does not acquire a valid title to the note or bill, but takes it subject to all its infirmities, precisely as if he had taken it after dishonor, or with knowledge of all the circumstances affecting its validity. This is the well-established rule in this state, as well as the recognized rule in England." Citing *Coddington* v. *Bay*, 20 Johns. R., 687, and several other cases. The court also cites *Stalker* v. *McDonald*, 6 Hill, 93, as a case where an innocent holder of negotiable paper received for a valuable consideration in the usual course of trade, though from a person having no title and no authority to transfer it, will be protected against the claim of the true owner; and *Seneca Co. Bank* v. *Neass*, 5 Denio, 329, is cited as a case where the holder may acquire a good title to a note which will be protected, although it was used for a different purpose from that intended, if there is no restriction as to its use, or the use made is a matter of indifference to the parties. In *Lawrence* v. *Clark*, 56 N. York, 128, it was decided that a party receiving a note on a precedent debt, without surrendering or relinquishing any security or right respecting it, is not a *bonâ fide* holder of the same. The note before it fell due had been transferred by the payees to the plaintiffs, who received and accepted upon it, and in part payment of, a prior existing indebtedness of the payees to them. In *McBride* v. *Farmers' Bank of Salem*, 26 N. York, 450, the marginal note is, that "a bank receiving from another notes for collection, obtains no better title to them, or the proceeds, than the remitting bank had, unless it becomes a purchaser for value without notice of any defect of title. It is not a purchaser for value by reason of its having a balance against the remitting bank for which it had refrained from drawing, and from having discounted notes for the latter upon its indorsement, in reliance upon a course of dealing between the banks to collect notes for each other, each keeping an open account of such collections, treating all the paper sent for collection as the property of the other, and drawing for balances at pleasure."

The court says :—" The decisions of our courts have been uniform, from the time *Coddington* v. *Bay*, 20 Johns., 637, was determined, that before the holder of a note can acquire a better title to it than the person had from whom he received it, he must pay a present valuable consideration therefor ; and that receiving it in payment of or as security for an antecedent debt is not such a consideration. *Rosa* v. *Brotherson*, 10 Wend., 86 ; *Stalker* v. *McDonald*, 6 Hill, 93 ; *Youngs* v. *Lee*, 2 Kern., 551. * * * These views are not inconsistent with the opinions in the following cases :—*Clark* v. *Merchants Bank*, 2 Comst., 380 ; *Commercial Bank* v. *Union Bank*, 1 Kern., 203 ; *Warner* v. *Lee*, 2 Selden, 144 ; *Scott* v. *Ocean Bank*, 23 N. York, 289." In *Cardwell* v. *Hicks*, 37 Barb., 458, the marginal note is, that " a holder can claim protection from the defense of a party whose note or other mercantile obligation has been obtained by fraud, only in case he has parted with some value or suffered some injury upon the faith of it. Where the holder will lose no right of which he was possessed when he obtained the note, and will be fully reinstated if he fails to recover, he is not a holder for value, and the equities of the party whose note has been obtained by fraud will be preferred. One who purchases a promissory note made by another party and pays for it partly in cash and partly by discharging a precedent debt due to him from the person of whom he buys it, is a *bona fide* holder to the extent of the money paid by him, and may recover that sum of the maker. But if the jury finds that the note was fraudulently obtained, this will constitute a valid defense to the action, to the amount of the debt discharged." The court said:—" Twenty years of judicial construction and decision have not fully terminated the controversy in this state so ably discussed in the conflicting cases of *Swift* v. *Tyson*, 16 Peters, 1, and *Stalker* v. *McDonald*, 6 Hill, 93. The case last mentioned was determined in the late Court of Errors and is entirely adverse to the ruling of the judge in the case at bar. That case expressly indorses *Coddington* v. *Bay*, and *Rosa* v. *Brotherson.* as the law of this state and condemns the case of

*Swift* v. *Tyson.* \* \* \* The case of *Youngs v. Lee,* 2 Kernan, 551, does not purport to overrule these cases."

In *Farrington* v. *Frankfort Bank,* 31 Barb., 183, the court says that the case of " *Seneca Co. Bank* v. *Neass,* 5 Denio, 829, simply recognizes the principle that the satisfaction of a precedent debt may form a valuable consideration for the transfer of negotiable paper. But the case was decided upon another ground and the questions now presented were not considered. \* \* \* The *Bank of Salina* v. *Babcock,* 21 Wend., 499, was decided upon grounds which were supposed to make the case an exception to the general rule, and was not considered by the court pronouncing the decision as overruling any of the antecedent cases in our own courts." The cases of *Cole* v. *Saulpaugh,* 48 Barb., 104, and *Schepp* v. *Carpenter,* 49 Barb., 542, were cases of accommodation paper, obtained without fraud and given without restriction as to use. Therefore the payee might lawfully transfer, and the holder lawfully receive them, in payment of a precedent debt. In *Philbrick* v. *Dallett,* 34 N. York Superior Ct. R., 370, the court says of these cases that they "are based upon the fact that the payee, not being limited or restricted as to the manner of its use, had a right to apply the note to the payment or security of an antecedent debt, or to sustain his credit with it in any other way. In *Turner* v. *Treadway,* 53 N. York, 650, (1873,) the defendant gave to *T* his promissory note, and the latter transferred it to the plaintiff's intestate in payment of a precedent debt, which debt was not evidenced by any writing or written acknowledgment, and the transferrer parted with no security. The court below held that the payment of a precedent debt made the plaintiff's intestate a *bonâ fide* holder. It was held that this ruling was error; that he was not a *bonâ fide* holder within uniform decisions from *Coddington* v. *Bay,* 20 Johns., 637, to *Weaver* v. *Barden,* 49 N. York, 286, and that the note was subject in his hands to any legal or equitable defense which existed against it in the hands of the payee.

The plaintiffs cite, as establishing the proposition that if

they had taken the draft in question as a payment of a debt which the drawer owed and so discharged that debt, they would have been *bonâ fide* holders under the law of New York, *Youngs* v. *Lee*, 12 N. York, 551, *Brown* v. *Leavitt*, 31 N. York, 113, and *Farrington* v. *Frankfort Bank*, 31 Barb., 183. Of these cases it is enough now to say that in *Weaver* v. *Barden*, 49 N. York, 286, the marginal note is, that, " to entitle a purchaser to the protection of a court of equity as against the legal title or a prior equity, he must not only be a purchaser without notice, but he must be a purchaser for a valuable consideration actually paid ; he must have paid the purchase money or some part thereof, or have parted with something of value on the faith of such purchase, before he had notice of the prior right or equity. Mere security given for the purchase money, or a credit upon a pre-existing debt, is not sufficient." The court says : " A mere receipt of a bill or note in payment of or as security for a precedent debt, has never in this state been held sufficient to protect the title of the holders as against the equities of third persons, and some new credit must be given, new advance made, or some prior security parted with, or a debt absolutely satisfied and extinguished, in order to complete the title of the holder. See cases cited in *Farrington* v. *Frankfort Bank*, 24 Barb., 554. In this court the rule has not been departed from ; on the contrary it has been recognized and followed in *Youngs* v. *Lee*, 2 Kernan, 551, and *Brown* v. *Leavitt*, 31 N. York, 113." The court also cites *Coddington* v. *Bay*, 20 Johns., 637, and *Chrysler* v. *Renois*, 43 N. York, 209, approvingly.

In *Day* v. *Saunders*, 3 Keyes, 347, the defendant indorsed the note of *W* for his accommodation, upon his agreement to use it in the purchase of a farm and for no other. purpose ; *W* transferred it to the plaintiff in payment of two notes, one not due, and one over-due, made by *W* and held by the plaintiff. It was held that the giving up of the notes by the plaintiff constituted a good consideration and made him a *bonâ fide* holder. In *Pratt* v. *Coman*, 37 N. York, 440, the marginal note is, that the " surrender to a

JANUARY, 1887.            409

Webster & Co. v. Howe Machine Co.

party of his own negotiable note, past due, and taking in lieu thereof a negotiable note before its maturity, is a sufficient parting with value to constitute a party a *bonâ fide* holder of the latter note." *A* procured the defendant's note by fraud and indorsed it to the plaintiff before maturity; for this note, and other notes by *A* the plaintiff surrendered to *A* his overdue notes, without notice. The court said: "The giving up to Agnew of his note, and taking the note in suit for it, according to every rule of presumption known to the law, is evidence of the intention of the parties to cancel the note. If, however, it did not discharge the pre-existing debt, it certainly operated to cancel the negotiable paper of the plaintiff; and this, as I understand the law, is a parting with value sufficient to constitute the plaintiff a *bonâ fide* holder of this note;" citing *Youngs* v. *Lee*, 2 Kernan, 551, and *Bank of Salina* v. *Babcock*, 21 Wend., 499, as supporting this doctrine. In *Boyd* v. *Cummings*, 17 N. York, 101, there was no restriction placed upon the use to be made of the indorsement, and upon the reception of it the holder discontinued proceedings supplemental to execution. In *Essex Co. Bank* v. *Russell*, 29 N. York, 673, in exchange for the indorsement the holder had given part cash and surrendered a note upon which third parties were holden. In *Farmers' & Mechanics' Bank* v. *Butchers' & Drovers' Bank*, 16 N. York, 125, the question was, whether the defendant bank was holden by its cashier's certificate that a check was good, when the drawer had no funds. The check was passed to the plaintiff in payment of an installment " then due " from the drawer and others upon shares in the plaintiff corporation. That the plaintiff was a *bonâ fide* holder was assumed, not argued. Probably the installment was due at the time when payment was made.

The payment of an installment upon shares of capital stock is the present purchase and reception of a new and additional interest in the corporation and may differ from a payment upon a pre-existing debt in the sense in which that expression is ordinarily used.

As has been stated, when A. B. Stockwell drew the draft

in suit and when it was accepted by Levi S. Stockwell as treasurer of the defendant corporation, the latter was not indebted to the drawer, nor was the draft drawn in or about its business, nor in any sense for its use or benefit, but solely for the use and benefit of the drawer—for his accommodation. It is the argument of the plaintiff that the charter provision giving the corporation a lien upon its shares belonging to the drawer, a stockholder, by way of security for any indebtedness from him to it, is a special legislative permission to the stockholders to borrow and to the corporation to lend to them the entire capital. We cannot accede to this. No act of stockholder, director, treasurer or other agent, which in the absence of this provision would be beyond the power given by the charter and therefore unlawful, is made lawful by its presence. If the defendant corporation should be compelled to make good a negotiable acceptance by its treasurer in excess of his power for the accommodation of a stockholder, it could have regained the amount paid from shares of its stock or from any other property belonging to him; the unlawfulness of the acceptance would be no bar in his behalf against such recovery. But the existence of the right to recover the money from the shares or from any other property does not make the acceptance lawful; does not put an indorsee thereof in the position of a *bonâ fide* holder of a negotiable paper issued by a corporation within the power given by its charter. His rights are in no wise strengthened thereby.

This privilege of lien created no form of indebtedness from the corporation to A. B. Stockwell, its stockholder; no fund in its possession for which he had any right to draw or sue. Notwithstanding the existence of the lien, and the possibility of thereby recovering money paid, the corporation remained an accommodation indorser in the fullest meaning of that expression. As between it and the drawer it was under no obligation to honor the draft at maturity. He could not have compelled it to pay and reimburse itself from his shares or from any other property. He could not force it against its will to occupy any other position than

that of accommodation acceptor. And, under the law of the state of New York, the plaintiffs, because of the application made of the draft, have no other or greater rights than had the drawer.

In December, 1876, and in February, 1877, A. B. Stockwell drew drafts upon the defendant similar to those in suit, to the amount of about $80,000, which were negotiated by the Credit Company, and were accepted and paid. The managing director of that company was also senior partner in the plaintiff firm. As we have said, a private manufacturing corporation has no power to accept drafts having no connection with its business, being merely loans by way of accommodation. It cannot acquire this power simply by exercising it repeatedly. The directors and stockholders cannot, either by permission or ratification, confer it upon any of its officers or agents. If the holder of such acceptance takes it with knowledge of its character he cannot enforce it. He has notice of its invalidity. The corporation may interpose that defense. If it is paid at maturity he gains no point of advantage over the corporation in respect to any other like acceptance taken with like knowledge, in the future ; he must hold the last of a long series of such with as little power to enforce it as he held the first. If he holds such acceptance without notice that it is for the accommodation of the drawer, and it is by an officer authorized to accept if the drawer has funds, he is not to be affected by the extrinsic fact of want of funds, and can enforce it if he holds *bonâ fide ;* for, as between such holders of negotiable paper without notice, and stockholders of a corporation, the law gives preference to the former. If after holding and enforcing many such acceptances he becomes the holder of another with notice of the infirmity, the previous repeated payments do not constitute an usage or course of business which will estop the corporation from interposing a defense against the last ; it is to stand as if it were the first and only acceptance made or held. The acceptance for accommodation of the drawers by the treasurer of a private manufacturing corporation is a legal fraud

upon the corporation, even if it be done with the assent of stockholders and directors. It is not within the legal power of all the stockholders of a corporation to divest it of its assets and possess themselves of the same by combination and by giving consent each to all others to draw for and receive such sums as they may mutually agree upon, even if the act takes the form of a loan for the use, benefit and accommodation of each. This rule of law is suspended in behalf of *bonâ fide* holders of negotiable paper. And by the law of the state of New York the holder of an acceptance thus fraudulently made cannot enforce it if he merely received and applied it upon a pre-existing debt and did not part with any right or property on the faith thereof. Therefore such application is the legal equivalent of notice of the vice in the acceptance, puts the holder beyond the pale of *bonâ fides*, and previous payments to him as a *bonâ fide* holder do not harden into an usage binding upon the corporation after he ceases to occupy that position. The holder of an acceptance may prove the repetition of acts of acceptance, the mode of transacting and the character of the corporate business, all for the purpose of establishing himself in the position of a *bonâ fide* holder for value without notice. But proof of all these facts will not effect such enlargement of charter powers as to make an accommodation acceptance lawful in his hands with notice, as would be the acceptance of an individual, who in this regard may do what he will with his own. The vote of the directors of the defendant corporation passed in 1874, that the treasurer " be and is hereby designated and appointed to sign, execute and deliver all instruments and papers pertaining to the business of the corporation," can have no other effect than to designate the officer who shall execute and deliver the legal and proper obligations of the corporation; such as concern its business and are within its corporate powers. And any corporate permission to A. B. Stockwell to represent the defendant and pledge its credit must be interpreted as referring to the transaction of business strictly within corporate design and power. The assets of a corporation

constitute a fund in its keeping, in trust, first, for creditors, lastly for stockholders. The statutory lien upon shares for indebtedness was given in aid of the proper application of this fund; not for the purpose of adding to the burden of obligation which previously rested upon a corporation in consequence of an unauthorized negotiable acceptance by its treasurer on behalf and for the accommodation of a stockholder. The plaintiffs, having received and applied the proceeds of such an acceptance upon a pre-existing account against the drawer, parting with no right or property on the faith thereof, cannot convert for their sole benefit this privilege of a lien into an absolute obligation; cannot make it the instrumentality of diversion of corporate assets from creditors to stockholders; since the act of the treasurer left the defendant in the position and with all the immunities of an accommodation acceptor.

Soon after the reception of the draft in suit from the drawer the plaintiffs indorsed and sold the same through the indorsee for the drawer and placed the proceeds to his credit. It was dishonored at maturity. They then, as payees and indorsers, took it up. If we should concede to the indorsee the right to enforce the draft against the defendant, that concession would not avail the plaintiff. The indorsee did not sell the draft to them. The plaintiffs neither purchased it, nor any new or additional right connected therewith. By their indorsement they came under an obligation to the indorsee in the event of dishonor to take back the draft and return the money received upon it; to place both parties in their original position. And this is the legal effect of the transaction. *Devlin* v. *Brady*, 36 N. York, 531; *Lancey* v. *Clark*, 64 N. York, 209.

The plaintiffs cite several cases in support of a contrary doctrine. But with one exception, if we are not mistaken, in no one of these was the plaintiff a party to, or in any form interested in, the note prior to a purchase after maturity; in the excepted case he had indorsed it for pay.

The Superior Court is advised to render judgment for the defendant.

In this opinion PARK, C. J., and LOOMIS, J., concurred.

CARPENTER, J., (dissenting.) In this case I think the majority has misapprehended the law of the state of New York. When it is said by the courts of that state that if the holder of an accommodation acceptance received it in payment of an antecedent debt, without discharging the debt or parting with anything of value at the time he received it, he is not a holder in good faith for value if the acceptance was unduly or fraudulently obtained, they mean, I apprehend, some fraud, artifice or deception practised upon the acceptor, by which he was induced to accept, and by which he may be subjected to some loss or damage in addition to the liability which he assumed by the acceptance. To illustrate : if the acceptance was obtained for the purpose of discharging a prior obligation, and is used for another purpose, the acceptor may be liable not only on the acceptance but also on the prior obligation ; a double liability which he did not contemplate. In such a case the law of New York exempting him from liability on his acceptance, although differing from the law of the United States and of this state, is not perhaps unreasonable. But I have been unable to find any case in which the principle has been applied to an acceptance by an agent who had no authority to accept as between himself and his principal, but who nevertheless has accepted under such circumstances as would otherwise bind the principal.

As the decision does not affect the law of this state, reaching no further probably than the present case, I deem it sufficient merely to state the ground of my dissent, without an extended examination of the numerous cases in New York.

In this opinion GRANGER, J., concurred.