GROMMES et al. v. SULLIVAN.

(Circuit Court of Appeals, Seventh Circuit. June 17, 1897.)

No. 374.

**1. CORPORATIONS—POWER TO CONTRACT DEBTS—NEGOTIABLE INSTRUMENTS.**

Corporations authorized to do a particular business, unless specially denied the power, have implied authority to contract debts in the legitimate transaction of the business authorized; and the power to contract debts, under the American rule, carries with it power to give negotiable notes or bills in payment or as security for such debts, unless that power is expressly denied.

**2. BUILDING AND LOAN ASSOCIATIONS—POWER TO CONTRACT DEBTS—NEGOTIABLE INSTRUMENTS.**

A building and loan association, empowered expressly or by implication to incur debts in various ways, as to its secretary for his services, to withdrawing members, to the representatives or beneficiaries of deceased members, etc., and to purchase, sell, or mortgage real estate, has by implication power to execute the customary evidences of indebtedness, including negotiable paper.

**3. SAME—AUTHORITY OF VICE PRESIDENT.**

Where a building and loan association has implied power, under ordinary circumstances or in the usual course of its business, to execute negotiable obligations, a bona fide purchaser of a particular obligation executed by the vice president has a right to presume that it was executed under circumstances giving the requisite authority.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

This appeal is from a decree dismissing the intervening petition of the appellants, John B. Grommes and Michael Ullrich, in the case of Towle v. Investment Soc., 78 Fed. 688, wherein William K. Sullivan had been appointed receiver of the assets of the society. The case was submitted and heard upon the petition, answer, and a stipulation of the parties. The substance of the petition is that George F. Montgomery, being indebted to the appellants in the sum of $1,608.47, on October 5, 1893, executed to them the following accepted draft:

"$1,608.47–100 Chicago, Oct. 4, 1893.

"Sixty days after date pay to the order of Grommes & Ullrich one thousand six hundred eight and 47–100 dollars, value received, and charge to account of

"George F. Montgomery.

"To the American Building & Loan Society, Owings Building."

The acceptance written upon the face of the draft being as follows:

"10—5—'95. Accepted. Am. B., L. & I. Soc'y, F. B. Modica, V. P."

It is alleged that prior to the delivery of the acceptance the appellants had from time to time taken from Montgomery "various and sundry other accepted drafts," drawn upon, and which at their maturity had been severally paid by, the American Building, Loan & Investment Society; that at the time when the first of the drafts had been taken from Montgomery in satisfaction of the amount which he owed the appellants, they had been advised by F. B. Modica, as the agent of the society, that Montgomery was a creditor of the society, and that his drafts upon it were good, and would be met at maturity; that each of the earlier drafts was accepted by the association "by F. B. Modica, its vice president, in manner and form precisely similar to the acceptance on the draft of October 4, 1893, aforesaid"; that "Modica was, at the time, in full charge and control" of the society, "and in all business matters, so far as your petitioners were concerned, he was the chief managing officer of the said society." It is further alleged that, the draft not having been paid at maturity, the petitioners in December, 1893, began in the superior court of Cook county an action at law, and procured a writ of attachment to be issued

and levied upon real property of the society in the county of La Salle, Ill.; that the attachment was a first and valid lien upon that property, which was worth more than the amount of the demand. The petition concludes with an offer to dismiss the proceedings in the superior court of Cook county, and to release the attachment, if leave to file the petition be granted, and the receiver ruled to answer the same within a short day.

The receiver answered, admitting the averments of fact in the petition, but alleging that when the draft was accepted Montgomery was not, and had not since been, a creditor or member or stockholder of the society; that by the by-laws of the society, of which the articles defining the powers of the president and vice president are set out, Modica had no authority to sign, and that the society had no right or power to execute, the acceptance. The by-laws referred to read as follows: "It shall be the duty of the president to preside at all meetings of the shareholders and of the board of directors, to sign all certificates of stock, and to sign all releases of mortgages, and he shall do all other duties usually pertaining to this office." "The vice president shall perform all the duties of the president in his absence. In case of any vacancy in that office he shall be ex officio president until the vacancy is filled."

The stipulation of the parties is to the effect that the copy of the by-laws set out in the answer is correct; that the petitioners, when the accepted draft was delivered to them, had no knowledge that such were the by-laws, other than the general knowledge imputed to them from the nature of the society; that it is true, as alleged in the answer, that the society was not and had not been indebted to Montgomery, of which fact, and that he was not a member or stockholder of the society, the petitioners were ignorant until the date of the stipulation. The American Building, Loan & Investment Society was incorporated on November 22, 1888, under the act of the general assembly of Illinois entitled "An act to enable associations of persons to become a body corporate to raise funds to be loaned only among the members of such association," which went into force July 1, 1879. 1 Starr & C. Ann. St. (2d Ed.) c. 32, §§ 108–134.

Frederick S. Winston and James F. Meagher, for appellants.
Lorin C. Collins and Wm. Meade Fletcher, for appellee.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

We are of opinion that, under the law of its creation, the American Building, Loan & Investment Society had power to execute negotiable paper. The rule is well established that corporations authorized to do a particular business, unless especially denied the power, have implied authority to contract debts in the legitimate transactions of the business authorized; and the right to contract debt, it is the equally well settled American rule, carries with it the power to give negotiable notes or bills in payment or security for the debts, unless that power is expressly denied. Rees, Ultra Vires, § 100; Green's Brice, Ultra Vires, p. 253; Daniel, Neg. Inst. §§ 381, 382; Mor. Priv. Corp. §§ 350, 351. The decisions upon the subject are numerous, and many of them are cited in the footnotes to the texts referred to. With respect to municipal corporations the supreme court of the United States has established a different doctrine (Police Jury v. Britton, 15 Wall. 566; Merrill v. Monticello, 138 U. S. 673, 11 Sup. Ct. 441); but for further exception to the rule as stated there seems to be no authority in this country.

In the usual course of its business the American Building, Loan & Investment Society was empowered, expressly or by implication,

to incur debt in various ways,—as, for example, to its secretary for his services, to withdrawing members, to the representatives or beneficiaries of deceased members, and to others, strangers to the association, for stationery, office supplies, office rent, for real estate to be used as a place of business; and by express provision it was authorized "to purchase at any sheriff's or other judicial sale, or at any other sale, public or private, any real estate" in which it had an interest, "and the real estate so purchased, to sell, convey, lease, or mortgage, at pleasure, to any person or persons whatsoever." This power to mortgage its real estate imported, necessarily, the power to borrow or in some way to become indebted. It had power, also, to receive from its vendees negotiable notes for the price of real estate sold, and from its members like notes for loans made to them, and the notes so acquired it had the right to sell, to pledge, and to indorse. In short, its right to incur debt and to execute the customary evidences of indebtedness was not exceptional or extraordinary, but pertained to the ordinary line and scope of the business which it was organized to do. It was competent, and doubtless would have been wiser, for the legislature to have provided that such societies should not have power to bind themselves by negotiable promises or contracts, into the consideration of which, when in the hands of a good-faith purchaser, there can be no inquiry; but it is not for the courts to put upon the powers granted a restriction which would be inconsistent with an established rule of construction, from which, presumably, the legislature intended no departure.

The power of the society to execute notes or bills for the various purposes suggested being conceded, and there being no ground for questioning the authority of Modica as vice president to sign the name of the society to such obligations executed in the regular course of business, the case comes within the rule that, when a corporation has power—"under any circumstances," as some of the cases say, and certainly when it has power under ordinary circumstances, or in the usual course of its business—to execute negotiable obligations, the bona fide purchaser of a particular obligation has a right to presume that it was executed under circumstances which gave the requisite authority. Gelpcke v. City of Dubuque, 1 Wall. 175; Railway Co. v. McCarthy, 96 U. S. 258–267; County of Macon v. Shores, 97 U. S. 272–279; Bissell v. Railway Co., 22 N. Y. 258; Monument Nat. Bank v. Globe Works, 101 Mass. 57; Webster v. Machine Co., 54 Conn. 394, 8 Atl. 482; Bank v. Young, 41 N. J. Eq. 531, 7 Atl. 488. It is admitted in the answer that the appellants received the acceptance in question of Montgomery "for a bona fide indebtedness," and, whether that be regarded as meaning in discharge of or only as collateral security for the debt, it made the appellants purchasers for value (Swift v. Tyson, 16 Pet. 1–18; Railroad Co. v. National Bank, 102 U. S. 14); and, in the absence of proof that they purchased with knowledge or notice that the acceptance was without consideration, or was otherwise wrongfully obtained, gave them the rights of good-faith purchasers. King v. Doane. 139 U. S. 166, 173, 11 Sup. Ct. 465; Bank v. Holm, 34 U. S. App. 472, 19 C. C. A. 94, and 71 Fed. 489.

The chief contention of the appellee is that the American Build-

ing, Loan & Investment Society is not a trading or manufacturing corporation, that building and loan associations are essentially corporate partnerships, and that the officers thereof have no more authority to bind them by negotiable paper than has a member of a nontrading partnership to make such paper in the firm name. Numerous authorities are cited in support of these propositions. Of the English cases referred to it is enough to observe that they proceed upon the theory that a corporation, without special authority, express or implied, cannot make, accept, draw, or indorse bills or notes. That is not the American rule. The only American cases cited, which need be mentioned, are State v. Oberlin Building & Loan Ass'n. 35 Ohio St. 263, and Christian's Appeal, 102 Pa. St. 184. These cases are not in point. In the first, the procedure was by quo warranto against the society for an abuse of its powers, and involved no question of the validity of a corporate obligation in the hands of an innocent purchaser. The Pennsylvania case had reference to the rights of the members in the distribution of the assets of an insolvent company, and contains nothing which can be regarded as bearing upon the question now under consideration. See Davis v. Building Union, 32 Md. 285.

It follows that the decree below must be reversed, and, accordingly, it is ordered that the decree entered be set aside, and a decree given for the interveners for the amount of the acceptance, with interest.