[No. 2508. Decided March 29, 1898.]

WASHINGTON MILL COMPANY *et al.*, *Respondents*, v. SPRAGUE LUMBER COMPANY, *Respondent*, FIRST NATIONAL BANK OF SPRAGUE, *Appellant*.

APPEAL — BRIEFS — CORPORATIONS — NOTE AND MORTGAGE BY STOCK-HOLDERS — CONSIDERATION — RIGHTS OF CREDITORS — RECEIVERS.

Appellant's brief will be stricken from the files, when it fails to comply with the supreme court rule requiring references therein to the pages of the record for verification, except in cases where the record is not very extensive.

The giving of a joint and several note by one stockholder of a corporation as principal and by the other stockholders as sureties creates an individual liability against the makers, although they may have intended by its execution to create an obligation against the corporation.

The fact that the stockholders of a corporation are estopped to deny the validity of certain notes and mortgages as subsisting corporate obligations is not necessarily binding upon the creditors nor the receiver of the corporation.

A receiver of an insolvent corporation may, in behalf of creditors, disaffirm acts of the corporation and maintain actions to set aside transfers and conveyances of the corporate property made in fraud of their rights.

Where mortgages given by a corporation have been declared invalid at the suit of a receiver of the corporation, all *bona fide* creditors, prior as well as subsequent, are entitled to participate in whatever funds the receiver may procure as the proceeds of the property of the corporation.

Although corporations in this state have power under Gen. Stat., § 1500 (Bal. Code, § 4253), to mortgage real and personal property, such power must be confined within the purposes for which the corporation was created, and does not authorize corporations to mortgage their property to secure the debt of any, or all, of its stockholders, to the injury of its creditors.

When a corporation enters into a contract which under no circumstances it has power to make, such contract is void as to its creditors, although assented to by all of its stockholders, since the party attempting to contract with the corporation is chargeable with notice of its powers.

The securing by a corporation of a stockholder whose services will be valuable to it by reason of his being a practical machinest would not afford sufficient consideration for a mortgage of all the corporate property to secure the individual debt of such stockholder, even if it were conceded that the corporation had the power to execute a mortgage of such character.

Appeal from Superior Court, Lincoln County.—Hon. WALLACE MOUNT, Judge. Affirmed.

*J. W. Merritt*, for appellant.

*Danson & Huneke*, for respondents.

The opinion of the court was delivered by

ANDERS, J.—The respondents moved to strike the brief of appellant from the files on the ground that the pages of the record were not referred to therein for verification, as required by Rule VIII. of this court. But, as the record did not appear to be very extensive and the errors assigned were largely predicated upon the alleged fact that the trial court's conclusions of law were not supported by the findings as made, we, following *Froelich v. Morse*, 15 Wash. 636 (47 Pac. 22), denied the motion at the hearing, although appellant had not complied with the rule even substantially. We deem this rule eminently reasonable, as it is but a matter of simple justice to the court and opposite counsel to designate in the brief just where any fact or proposition discussed therein may be found in the record. A failure to comply with the requirements of the rule might, in certain instances, impose great and unnecessary labor upon this court; and we again take occasion to suggest that it is not only the better, but the safer, practice for counsel to observe the rule in all cases.

The respondents, Washington Mill Company and the Sprague Lumber Company, are corporations organized and existing under and by virtue of the laws of the state of

Washington. In September, 1892, all of the capital stock of the Lumber Company was owned by David B. Strickler, C. F. Bassett and F. H. Hayes, each holding the same number of shares. On or about the 29th day of that month the said Strickler sold his stock to one Nygard for the agreed price of $5,000, receiving in payment therefor $2,500 in cash and land, and a note for $2,500, the remainder of the purchase price, signed by the said Nygard, Bassett and Hayes, the last two named individuals being sureties for Nygard. Before the note was executed, the president of the appellant, the First National Bank of Sprague (now Fidelity National Bank of Spokane) agreed with Strickler to discount the note, and, although he first suggested that the note be executed by the Lumber Company in its corporate name, he finally concluded to have it signed by the stockholders individually, "to avoid any irregularities of the corporation," which was accordingly done by his direction. Strickler then took the note and immediately delivered it to the bank in pursuance of the original agreement, the president and manager of the bank knowing at the time that it was given and received in part payment of a debt due from Nygard individually. The note was joint and several in form, and was due in one year after date. The makers not being able to pay it at maturity, on December 29, 1893, a new note was given to the bank payable on demand for the principal of the first note and accrued interest thereon. This note was also joint and several, and was signed by the same parties who executed the first one. On January 20, 1894, the Lumber Company, at the request of the bank, executed a mortgage upon all of its real estate, and a chattel mortgage upon all its personal property to secure the payment of the last mentioned note. At the time of the making of these mortgages it was agreed by and between the parties thereto that the mortgagor should retain possession of the

property mortgaged, conduct its business as usual, and out of the proceeds thereof pay the bank $100 per month, provided the business of the company justified the payment of that sum. Payments to the bank were made on the note from time to time by the Lumber Company, and the amount thereof was charged to Nygard on the books of the concern. The Lumber Company conducted its business after the execution of the mortgages as it had theretofore done, until about January 6, 1896, at which time, being wholly insolvent, it ceased to do business and turned its property over to the bank. At the time the mortgages above mentioned were given, the Lumber Company owed various persons, but no provision whatever was made for the payment of these debts. In January, 1896, the respondent, Washington Mill Company, instituted this action against the Lumber Company to recover the balance due on an account for lumber and building materials sold and delivered to the defendant between May 29, 1893, and October 22, 1895, and to obtain a decree declaring the two mortgages given to the bank null and void. The plaintiff in its complaint alleged the insolvency of the defendant and asked that a receiver of its property be appointed. The Lumber Company not objecting, the respondent, Sanderson, was duly appointed such receiver. After giving the bond required by the court, the receiver, by leave of the court, filed his complaint in intervention alleging, in substance, that the defendant, Sprague Lumber Company, without any consideration, had executed and delivered to the First National Bank of Sprague, the other defendant, a mortgage upon all its real estate and another mortgage upon its personal property; that these mortgages were given to secure an indebtedness owing to said bank by a third person; that the Sprague Lumber Company had no authority under its articles of incorporation to become surety, and that, at the time

the mortgages were executed and delivered, the Sprague Lumber Company was indebted to various creditors, which indebtedness had not since been paid. Upon this complaint the receiver asked to have both mortgages declared void and canceled. The bank answered both plaintiff's and intervenor's complaints, setting up facts intended to show the validity of the mortgages. The court found the mortgages void as to the plaintiff and receiver, and entered its decree accordingly.

The claim that the court erred in finding that the note in question was signed by Bassett and Hayes as sureties for Nygard is, in our judgment, without any substantial foundation. Mr. Bassett himself testified explicitly that he and Mr. Hayes both signed the first note as sureties for Nygard; and the very nature of the transaction clearly shows that such was the fact. Nygard alone owed the debt for which the note was given, and if the other parties to the note were not his sureties it is difficult, to say the least, to understand what their relations to him were. The fact, if it be a fact, as claimed by appellant, that they did not intend to be bound individually when they signed the note, and that they supposed they were creating an obligation against the corporation, cannot change their status as shown by the note itself, as well as by the evidence with reference to it. The second note was but a renewal of the first, and the relations of the parties thereto to each other remained the same. The finding of the court that the note in controversy was executed on September 29, 1893, was erroneous, it in fact having been made on December 29, 1893. But this error was in nowise prejudicial to the appellant, as the respondents are not claiming that the lapse of time between the execution of the note and the mortgages constitutes any evidence of bad faith on the part of the makers or the Lumber Company or the bank. That the note deliv-

ered to the appellant bank evidenced a debt of the individual makers thereof, and not that of the corporation in which such makers were stockholders, seems to us almost too plain for argument or discussion. But the fact that Bassett and Hayes signed it as sureties for Nygard did not in any manner affect the bank. As to it, the note was manifestly the debt of each and every one of the makers. It would be no defense to a suit by the bank on this note for Bassett and Hayes, or either of them, to plead that they were merely sureties for Nygard. It is contended by the learned counsel for the appellant that inasmuch as the Lumber Company and all of its stockholders have at all times recognized the note and mortgage as valid and subsisting obligations against the corporation, neither the stockholders nor the corporation can now be heard to say that they are invalid and that the creditors of the corporation are in no better position in that regard than the stockholders themselves. But, assuming, for the present, that the validity of the mortgages cannot be called in question by the stockholders, all of whom authorized their execution, it by no means follows that they are good against creditors of the Lumber Company or their representative, the receiver. The receiver of an insolvent corporation represents not only the corporation, but also the stockholders and creditors, and it is his duty to assert and protect the rights of each of these several classes of persons. Wait, Insolvent Corporations, § 210; Boone, Corporations, 174. And as a representative of creditors the receiver is vested with rights not possessed by the corporation. Wait, Fraudulent Conveyances, § 117. In behalf of creditors he may disaffirm acts of the corporation, and maintain actions to set aside transfers and conveyances of the corporate property made in fraud of their rights. Wait, Insolvent Corporations, §§ 562, 227; *Van Cott v. Van Brunt*, 2 Abb. N. C. 283;

*Upton v. Englehart*, 3 Dill. 496; *Gillet v. Moody*, 3 N. Y. 479; *Talmage v. Pell*, 7 N. Y. 328; *National Trust Co. v. Miller*, 33 N. J. Eq. 155; *Alexander v. Relfe*, 74 Mo. 495; *Pittsburg Carbon Co. v. McMillin*, 119 N. Y. 46 (23 N. E. 530). Discussing this question, the court in the case last cited well said:

" It is claimed that no action could have been maintained by the trustee, representing the trust combination, against the Brush Electric Light Company, to recover the purchase price of the carbons, for the reason that the illegality of the combination would have constituted a good defense. Assuming this predicate, it is asserted that the receiver stands in the same position, and that his title is subject to the same infirmity as that of the combination which he represents. Without considering the assumption upon which this proposition is based, it is a sufficient answer to the proposition asserted, that the receiver unites in himself the right of the trust combination, and also the right of creditors, and that he may assert a claim as the representative of creditors, which he might be unable to assert as a representative of the combination merely. The general rule is well established that a receiver takes the title of the corporation or individual whose receiver he is, and that any defense which would have been good against the former, may be asserted against the latter. But there is a recognized exception, which permits a receiver of an insolvent individual or corporation, in the interest of creditors, to disaffirm dealings of the debtor in fraud of their rights. (*Gillet v. Moody*, 3 N. Y. 479; *Porter v. Williams*, 9 id. 142; *Curtis v. Leavitt*, 15 id. 9, 108.) Assuming that the trustee could not have recovered of the Brush Electric Light Company for the reasons suggested, it would be a very strange application of the doctrine that no right of action can spring from an illegal transaction, which should deny to innocent creditors of the combination, or to the receiver who represents them, the right to have the debt collected and applied in satisfaction of their claim. The just rule of the common law, that courts will not lend their aid to enforce illegal transactions at the instance of a party to the illegality, would be

misapplied if permitted to be used to prevent the application of the fund in question to the payment of creditors of the combination."

While it is perhaps unnecessary to add anything to what was there said by the learned court, it may be proper to observe that the application of the doctrine contended for by the appellant to this case would place the creditors of the Lumber Company completely at the mercy of the officers and stockholders of the corporation.

The next question to be considered is whether the mortgages under consideration are void as to the respondent Mill Company, or any of the creditors represented by the receiver.   The appellant insists that their validity cannot be questioned by the Washington Mill Company for the reason that its claim accrued subsequently to the time of their execution, citing *Roy & Co. v. Scott, Hartley & Co.*, 11 Wash. 399 (39 Pac. 679), in support of its position.   The evidence on that point is not clear, but we are inclined to the opinion that the most, if not all, of the Mill Company's debt did accrue after the mortgages were made, and that said company must therefore be held to be a subsequent creditor.   But, assuming that to be true, it does not necessarily follow that the judgment must be reversed.   The court below found, and the proof shows, that at the time the mortgages were executed there were various creditors of the Lumber Company whose claims have never been paid. These creditors were represented by the receiver, and if the mortgages were void as to them, or any of them, the court was right in setting them aside.   Bump, Fraudulent Conveyances (4th ed.), § 34.   And we are of the opinion that they were void as to existing creditors at least, and all *bona fide* creditors are therefore entitled to participate in whatever funds the receiver may procure as the proceeds of the property of the corporation.   Wait, Fraudulent Convey-

ances (3d ed.), § 104. Bump, Fraudulent Conveyances (4th ed.), § 297. It is true that our statute in relation to corporations authorizes them to mortgage, sell and convey real and personal property (1 Hill's Code, § 1500, subd. 3, Bal. Code, § 4253), but that does not change the law as to the rights of creditors. Nor does that section authorize corporations to mortgage their property for all conceivable purposes and under all circumstances. A corporation, being the mere creature of the law, possesses only those powers which the statute, or its articles of incorporation, confer upon it, either expressly or as necessarily incidental to the purposes for which it was created. Green's Brice's *Ultra Vires*, 29; *Bank of Augusta v. Earle*, 13 Pet. 587; *Dartmouth College v. Woodward*, 4 Wheat. 518; *Beach v. Fulton Bank*, 3 Wend. 583. Our statute also provides that corporations shall have power to carry on all kinds of business within the objects and purposes of the company, as expressed in the articles of incorporation. 1 Hill's Code, § 1500, subd. 7 (Bal. Code, § 4253). The articles of incorporation of the Sprague Lumber Company provided that the object and purposes of the company were "to manufacture, buy and sell lumber, and of engaging in the lumber business and selling all kinds of building material." And, as incident to the business therein specified, the company might have bought lumber on credit and properly mortgaged its property to secure the payment of such debt. But manifestly it had no power to mortgage all its property, without consideration, to secure the debt of any, or all, of its stockholders, to the injury of its creditors. It was no part of its business to become surety for the accommodation of others. Green's Brice's *Ultra Vires*, p. 252; *Lucas v. White Line Transfer Co.*, 59 Am. Rep. 449 (30 N. W. .771). See, also, *Madison, etc., Plank Road Co. v. Plank Road Co.*, 7 Wis. 59. And every person dealing with it

was charged with notice of its powers. When a corporation enters into a contract which under no circumstances it has power to make, such contract is void as to its creditors, although assented to by all of its stockholders. *National Trust Company v. Miller, supra,* and cases cited. See, also, *Webster v. Howe Machine Co.,* 54 Conn. 394 (8 Atl. 482). This principle was applied in *Stewart v. Gould,* 8 Wash. 367 (36 Pac. 277), where it was, in effect, held that one owning all of the stock of a corporation was not authorized to transfer the property of the corporation to secure an individual indebtedness, to the prejudice of the corporation creditors. But the appellant insists that the note and mortgage were not executed without consideration, for the reason that the Lumber Company was benefited by having the services of the stockholder Nygard, who was a practical machinist, and that under our decision in *Wheeler, Osgood & Co. v. Everett Land Co.,* 14 Wash. 630 (45 Pac. 316), the mortgages in question are valid. We held in that case that a corporation, under its articles of association, which were quite comprehensive and general, had a right to become surety for a contractor, in accordance with the local custom of such companies, for the purpose of procuring certain business, and which it did procure. There the corporation by becoming surety received a direct benefit in the enhancement of its ordinary and legitimate business, but no such fact appears in this case. The powers of the Lumber Company are much more circumscribed by its articles of incorporation than were those of the corporation there considered. And even if it were conceded, which we do not concede, that the Lumber Company had power to execute the mortgages under consideration, still it would be impossible to conclude that the practical ability and valuable services of a new stockholder were a sufficient consideration for a pledge of all the property of the company to

secure such stockholder's debt. The cases cited from other courts by appellant differ so widely from the case at bar in respect to the facts and circumstances involved that they are entitled to but little weight in support of its contention.

We have carefully examined all of the errors assigned by appellant, and, perceiving no substantial error in the record, the judgment is affirmed.

Scott, C. J., and Gordon, Dunbar and Reavis, JJ., concur.